MANN, Receiver of The Cattskill and Canajoharie Rail Road Company *v.* F. PENTZ.

THE SAME *v.* W. A. F. PENTZ.

THE SAME *v.* ZADOCK PRATT.

The remedy provided by the thirty-sixth section of the article of the revised statutes relative to " Proceedings against Corporations in Equity," is limited to creditors who have proceeded to an execution against property, without effect.

The thirty-ninth and fortieth sections apply to *monied incorporations* only ; and as to those, give a remedy to the attorney general, or to any creditor or any stockholder, where the corporation is insolvent, or has violated its charter or any law binding upon it.

The thirty-sixth section is applicable to all corporations, except the religious, library and school institutions enumerated at the close of the article.

The forty-second section, and all the subsequent sections in the same article, apply to proceedings instituted under section thirty-six, as well as to those instituted under sections thirty-nine and forty.

Hence, a receiver of a rail road company, appointed in a suit commenced against it under the thirty-sixth section, is clothed with all the powers and authority conferred upon receivers by the forty-second section and the several other sections which it refers to and adopts.

A receiver under section thirty-six, has authority to sue for and collect all debts and demands belonging to the corporation.

Under the forty-second section, such a receiver may recover sums remaining due upon any shares of stock subscribed in the corporation.

This remedy is given by the statute ; it may be exercised although no call has ever been made for the sums remaining unpaid on the shares ; it is concurrent, and may be enforced at law or in equity ; and a suit in equity for that purpose may be maintained against each stockholder severally.

*Semb.* that in respect of contribution, a suit in equity may be maintained against all the delinquent shareholders jointly.

A receiver prosecuting a shareholder for the unpaid balance of his stock, is not restricted in his recovery to the amount of the debt due to the creditor of the corporation who procured his appointment. He is the officer of the court, acting for all the creditors and stockholders.

Nor is it an answer to his suit, that there are other shareholders who are more delinquent than the defendant in the suit ; nor that such creditor is himself a delinquent stockholder. If the receiver acts oppressively in enforcing the payments due on the stock, the court will interfere either on a cross bill bringing in the favored parties, or on a summary application.

A shareholder holding one hundred shares of stock, on which more than half of the nominal amount had been paid, by an arrangement with the directors, received full scrip for sixty shares, and soon after relinquished the remainder to the corporation. On the corporation subsequently passing into the hands of a receiver, it was *held*, that the creditors, and the other stockholders who did not assent, were not affected by that arrangement, and that such shareholder must make the whole hundred shares full stock, if it were necessary in order to discharge the corporate liabilities.

An order for a receiver, when his appointment is completed, vests in him, in equity, all the property and effects subject to the order, without any assignment.

In respect of the receiver's exercise of his powers in courts of law, an assignment to him by the party is proper, and as to the legal title to real estate, it is indispensable. But in equity, although usual in our practice, it is unimportant; and in England it is not practised.

An assignment, purporting to be executed by a corporation through its president and under its corporate seal, was produced, and the president's signature proved, and there appeared to be a seal attached; but there was no evidence whether the seal was that of the president or of the corporation.

*Held*, that the court could not decide that point upon inspection, and that the execution of the instrument was not proved.

Nov. 14, 1844; January 6, 1845.

THESE suits were commenced by the receiver of The Catts-kill and Canajoharie Rail Road Company, against three of its stockholders, to compel them to pay up their shares in its capital stock. They were substantially alike in the pleadings and testimony, and were heard at the same time.

It appeared that the company in question was incorporated on the 19th of April, 1830, with a capital of $600,000, divided into shares of fifty dollars each; which the legislature in 1837, authorized to be increased to a million of dollars. The Messrs. Pentz were original subscribers for the capital stock, each taking fifty shares; and they had paid all the calls made upon them by the company, and seven per cent. in addition, amounting in the whole to thirty-six dollars on each share. Thus, there remained unpaid fourteen dollars on their respective shares, or from each of those defendants, $700.

A. Van Vechten, a creditor of the corporation who had obtained a judgment at law and issued an execution thereon which was returned unsatisfied, filed a bill in the court of chancery, for a sequestration of the company's property and effects.

On the 9th of December, 1842, an order for a sequestration

was made in that suit, and a receiver of all its property directed to be appointed, to whom when appointed, the order required the company and its officers to assign the same. On the 9th of January, 1843, the complainant was duly appointed receiver in pursuance of that order.

He filed the bills in these causes on the 3d of August, 1843, and beside the facts before stated, alleged that there were several thousand dollars of debts owing by the corporation; and that with all the assets, there was not sufficient due from solvent stockholders, on their unpaid shares, to discharge those debts. There was however no valid proof in support of the latter allegation.

The answers stated, and so it appeared, that several of the stockholders had not paid as much on their shares as had the defendants; and it further alleged that if all who were able were made to pay up, there would be a balance coming to the defendants on what they had already paid. That Van Vechten was a stockholder who had not paid on his shares; and that all the stockholders were necessary parties to the suit.

As to the defendant Pratt, he was not an original subscriber, but in 1840, after the last call was made, he became the purchaser of one hundred shares, the scrip for which was duly transferred to him. On the 30th of December, 1840, by an arrangement between him and the directors, (expecting which he bought the stock,) sixty shares were made full stock, and the residue of the $32½ previously paid on each of the one hundred shares, was credited on the remaining forty, being $6¼ on each share. And the 40 shares were afterwards relinquished by him to the company.

*J. Van Vleck*, for the complainant.

*S. Sherwood*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—The first and most important objection made to the complainant's claim, is that he is a receiver merely as at common law, and that he has none of the powers conferred by the 42d section of the revised statutes rela-

tive to procedings against corporations in equity. (2 R. S. 464, § 42.)

There may still be a question whether the receiver under the 36th section of the same statute is not clothed with the power assumed by this bill, even if the 42d section is not applicable to such receiver.

1. As to the force of the 42d section. The 36th section of the statute, is limited to creditors of corporations who have wholly exhausted all the remedies which courts of law afford for the collection of their debts; and if their demand be a decree, it applies when an execution against the property of the corporation has been returned unsatisfied.

The section directs a sequestration of the stock, property, things in action and effects of the corporation, and the appointment of a receiver. Section 37, provides that on the final decree in the cases under the 36th section, the court shall cause distribution of the property of the corporation to be made among the creditors, in the order provided in the article relative to the voluntary dissolution of corporations.

The 39th and 40th sections apply only to *monied corporations*, and they enable the Attorney General, or *any creditor* or *any stockholder*, of such corporation to apply for a receiver where the corporation is insolvent, or has violated its charter or any law binding upon it.

Under these sections a creditor may apply before attempting to collect his debt in the courts of law.

Section 41st permits the court on such application to appoint one or more receivers to take charge of the property and effects of the corporation, and to collect, sue for and recover the debts and demands due and property belonging to it.

These three sections are unquestionably limited to monied corporations.

The 42d section is in these words. "Such receiver shall possess all the powers and authority conferred, and be subject to all the obligations and duties imposed, in article third of this title, upon receivers appointed in case of the voluntary dissolution of a corporation."

It is not denied that the authority given in the third article here

referred to, is ample for the institution of this suit.   But it is contended that the 42d section and all those following it in article 2d of the title of the statutes which I have cited, are limited to monied corporations and have no application to rail road companies.

There is, in truth, some obscurity in the provisions of the second article of this statute.

The word "*such,*" before "receiver," in section 42d, is one ground for restricting that section to receivers appointed under section 41st, the immediate antecedent.   But if that limitation had been intended, the more appropriate expression would have been, "*such receiver or receivers ;*" because the 41st section provides for one or more receivers.   And the expression "*such receiver,*" is not inconsistent with its being applicable to all the receivers previously spoken of in the second article.

Again, there is also an evident want of precision in the several sections.   All the powers conferred upon the receivers of monied corporations under the 41st section, are again granted in the general provision made by the 42d with much additional power and authority.   (See § 42, 67 and 68, and 2 R. S. 42, § 7.)   I think the explanation of this, as well as a key to the effect of the 42d section, is to be found in the origin of the provisions under consideration.

They came from the act of 1825, " to prevent fraudulent bankruptcies of incorporated companies, and to facilitate proceedings against them." (Laws of 1825, Ch. 325, page 448.)

The fifth section of that act, gave to an unsatisfied judgment and execution creditor, *of any incorporated company,* the same right to a sequestration and receiver, as is contained in the 36th section of the revised statutes.   It also provided for an equal and proportionate distribution among the creditors ; and for compelling a discovery of the property of the corporation by its officers and others.

The seventeenth section allowed the Attorney General, or any creditor, to pursue the remedy against *incorporated banks,* which is now contained in sections 39 and 40, of the revised statutes ; and it authorized the court to appoint a receiver of the property of the company and distribute it among the creditors.

Thus the statute of 1825 gave no remedy to stockholders, and the direction as to distribution of the effects of banks, omitted to prescribe the order and mode, except by reference to the fifth section.

In the revision of our statute law, this act was distributed and was incorporated with additions, in various parts of the revised statutes.

A part of the fifth section is in section 36th and another part of it in section 37th of the article relative to proceedings against corporations in equity, as I have before stated. This remedy was extended to creditors by decree as well as by judgment.

Another portion of section fifth, that relative to compelling a discovery, &c., is found in section 51st of the same title; by which transposition, it is applicable as well to proceedings under the 39th section, as to those under section 36.

And the provision for an equal distribution of the assets contained in section five, is re-enacted in section 79th of the third article of the same title of the revised statutes, and by reference to that article in article second, is applied to the proceedings under the 36th and 39th sections.

The seventeenth section of the act of 1825, was similarly re-enacted in sections 39, 40 and 41, of the second article before mentioned; and in other sections of the same title. Its provisions were extended to insurance and loan companies; and stockholders are enabled to avail themselves of the remedy which they afford.

The revised statutes pursuing the former act, thus provide two distinct adverse remedies against corporations, one of which is applicable to all, and the other to monied incorporations only.

The first is open to an unsatisfied judgment and execution creditor, without the production of any other evidence of its necessity, than the fact that he has pursued his remedy to the utmost verge of the law.

The second is open to any creditor or stockholder; but he must show that the corporation is insolvent or has violated its charter.

In each case a sequestration ensues; and a receiver is appointed, who is to take charge of the stock, property, things in action, and effects of the corporation. The 41st section works

a *sequestration* as effectually as the 36th, although that word is not made use of in section 41st.

The final result under each mode of proceeding is the same, namely, a distribution of the property of the corporation among its creditors.   (See § 37, 42, 48, 79.)

In each case the court proceeds upon notice to the corporation, (*Devoe* v. *Ithaca and Owego R. R. Co.*, 5 Paige, 521;) and in both cases, whenever a receiver is appointed, nothing short of the payment of the debt of the complainant, will avoid an entire distribution of the corporate effects, and the winding up of the corporation.

Such being the effect of the statutes, I can perceive no reason why a receiver appointed under the one mode of proceeding, should not have been clothed with the same power as one appointed under the other.

Under the act of 1825, from which all these provisions were derived and re-enacted, the receiver, under section 5th, was co-extensive with the one under section 17th, and indeed section 5th was the principal section; applying to all classes of corporations, having more full language in respect of sequestration and the property to be held by the receiver, and containing the only direction for the final equal distribution of the assets.

Instead of any indication of an intention to abridge the remedies in the re-enactment, they are very considerably extended and enlarged.

I think that all the sections in article 2d, succeeding the 42d, are clearly applicable to all corporations.   These with the 42d are new provisions, designed to carry out more effectually and systematically, the previous remedies.   Section 43d allows the creditor to make the directors or stockholders parties, where they are made liable by law for the *payment of the debt in any event or contingency.*

Whether this refers to the liability of directors in consequence of fraud or misconduct, such as is pointed out in relation to monied corporations in the first volume of the revised statutes, 1 need not decide here. It undoubtedly includes the absolute and direct liability for the corporate debts, which in some of our acts of incorporation is fixed upon directors or stockholders, or

upon both. This species of liability is very common in manufacturing corporations, and some others.

Among the great number of *monied corporations* existing at the time of the revision of the statutes there were probably some containing this personal liability ; but they were so few compared with the very large number of manufacturing companies which were subject to that liability, that I am satisfied the latter were within the intention of the legislature in this enactment.

The words "*such application,*" in § 43, are equally applicable to the proceeding under both sections.

And the subsequent words "*any* corporation," are very comprehensive, and if the former words were doubtful, would extend the 43d section to all the applications previously spoken of.

Section 44, is for any creditor of *a corporation.* If it be said that the word *such* before "directors or stockholders," limits its force to the proceeding under § 39 ; the answer is that it is no more than equivocal, and the generality of the former expression must prevail.

Section 45 applies to all corporations and there is no qualifying expression by which it can be restricted to those mentioned in § 39.

Sections 46 and 47 relate to the proceedings under the 45th.

The 48th to the 50th inclusive, are apparently applicable to any corporation ; and the sections from 51 to 56 inclusive, are expressly made to apply to the whole article.

The Chancellor decided in *Judson* v. *The Rossie Galena Company,* 9 Paige, 598, that section 56th applied to proceedings under the 36th section.

This review of the various provisions, shows that after the appointment of the receiver, there is no difference made in the subsequent proceedings under sections 36 and 39 ; unless it be in the powers of the receiver. The 42d section, if applicable to both modes of proceeding, makes the whole article consistent and harmonious. If it be restricted to that under § 39, and the receiver's whole power is derived from the statute ; it leads to the absurdity of authorizing a proceeding by which the corporate property is all taken from its officers, vested in a receiver, and there suspended till distributed under a decree, without any pow-

er in the receiver to collect debts or preserve it if perishable. If it be said that the receiver under § 36, as a common law receiver, may sue and collect debts and demands and secure the corporate property, it is not certain that it does not concede the whole argument. This I may be obliged to speak of in another place.

I am fully convinced, that having in view the origin of these two modes of proceeding enacted in the revised statutes; their object and effect, the various subsequent sections manifestly applicable to both, the inconsistency of limiting the 42d section to the one under § 39, and the absence of any reason for such restriction; I should grievously err, if upon the mere use of the words "*such* receiver," in section 42d, I should restrict its operation to the "receiver or receivers" appointed under section 39.

I have examined the point thus minutely, not only because of its great importance, but because I was much pressed with the weight of a very high authority in favor of the other construction. I allude to the opinion of the Chancellor in the case of *Verplanck* v. *The Mercantile Insurance Company*, 2 Paige's R. 438, 452. The suit was one under the 39th section of the article which has been discussed, so that the observations of that very learned judge in reference to the 36th section, although entitled to profound respect, are not controlling. If they were, I should be relieved from the difficult task of examining the point. The Chancellor speaks of the great powers now conferred upon receivers appointed under section 39th, by the 42d section. He says the order appointing them is in effect a final order in the cause, and works a virtual dissolution of the corporation: That a different kind of receivership is authorized by the 36th section, which is the same kind of receiver that was authorized by the seventeenth section of the act of 1825 : That those were strictly common law receivers; such as are usually appointed to protect the fund during a litigation ; and they have no powers except such as are conferred upon them by the order for their appointment and the course and practice of the court.

It may be observed that if the receiver authorized by the 36th section is co-extensive with the receiver which was authorized

by the 17th section of the act of 1825, the present complainant has all the authority which he claims.

This court refused to interfere at all in these cases prior to the act of 1825. (*Attorney General* v. *Utica Insurance Company*, 2 Johns. Ch. R. 371; *The Same* v. *The Bank of Niagara*, Hopk. R. 354.)

The act of 1825 was consequent upon the latter decision.

His honor the Chancellor's understanding of the force of that statute, may be seen by his action under it when its benefits were asked at his hands soon after its passage. *In the matter of the Franklin Bank*, 1 Paige's R. 85, he made an order for a receiver of that bank, on the petition of a creditor under the 17th section of the act of 1825. Chancellor Kent was appointed, and he was authorized to collect and convert into money all the debts and securities of the bank, and to sell all its property at auction. This operated as a virtual dissolution of the corporation. Subsequently the Chancellor applied the rule of equality in the distribution, to the effects in the hands of the receiver of the Franklin Bank. (1 Paige, 249, 255.)

In the ensuing year (1829,) in the case of *The Attorney General* v. *The Bank of Columbia*, the Chancellor made an order to appoint a receiver of that corporation under the same seventeenth section of the act of 1825, and on an appeal from his decision, the question was incidentally discussed in the Court for the Correction of Errors. (1 Paige, 511; 3 Wend. 588.) There does not appear to have been any doubt of the propriety of delegating to the receiver, if one were proper, all the powers conferred by the Chancellor's order, in such cases. And in the instance of the Bank of Columbia, the order was as full as in that of the Franklin Bank, and both institutions were wound up and their effects distributed under the act of 1825.

Thus it appears that under that act, the court clothed receivers with all the powers which are now usually granted in proceedings under the 39th section. The revision of the statutes was contemporary with the application of these powers under the act of 1825; the revisers and the legislature were doubtless cognizant of the Franklin Bank proceeding, which was a matter of great public notoriety; and the enactment of the entire provis-

ions of the 5th and 17th sections, with additions and improvements, indicates with these facts, that there was no intention to restrict the extent of the power of receivers in such cases. If such had been the design, the settled construction of the act of 1825, admonished the legislature to make a clear and decided limitation of the powers of the receivers, where they were deemed excessive in practice.

The subject has again been before the Chancellor recently, in the case of *Nathan, Receiver, &c.* v. *Whitlock*, 9 Paige, 152, (S. C. 3 Edw. Ch. R. 215 ;) which I think is an authority in favor of the complainant, although the question is not examined at large in the judgment of the court. The receiver in that case was appointed under *the* 36*th section* of the article in the revised statutes, in the matter of the Mohawk Insurance Company. This appears in 3 Edw. Ch. R. 222, from the remark of the Vice-Chancellor in the report of the case, and I have examined the petition for his appointment, and the testimony in the suit of Nathan, which disclose the same fact. The precedent given in Edwards on Receivers, 263, is the identical order appointing Nathan to be receiver.

The form of the petition is also given in the same book. The order appointing the receiver recites that the company was insolvent, but there is no such allegation in the petition. The latter was drawn up in view of the 36th section of the statute. It contains some allegations conformable to section 38, but none that would bring it within the 39th section.

As such receiver Nathan filed a bill to compel Whitlock to pay the amount of a note which the company had held for the capital stock taken by him, and which he had got cancelled without payment, by an arrangement effected by him by means of his being a director of the company. The company was insolvent at that time.

It was objected by Whitlock throughout, that the receiver could not enforce this claim, or any other which the corporation itself could not maintain. So the defendant here insists that as a common law receiver under section 36th, the complainant has no right to enforce payment of stock which the corporation itself could not enforce, there being no call directed or made. In ref-

erence to this, the Chancellor says, in *Nathan* v. *Whitlock*, (p. 159,) " The receiver is the proper person to bring the suit, as he has the legal title to all the property of the company ; being vested by the revised statutes with all the rights given by law to trustees or assignees of insolvent debtors." And he cites 2 R. S. 464, 469, § 42, 67 and 68.

Whitlock appealed to the Court for the Correction of Errors, which affirmed the decree of the Vice-Chancellor and Chancellor, on the 29th of December, 1842. In his printed points, he insisted that Nathan as receiver could not maintain the suit, and the points on the part of Nathan maintained his right to sue under the 42d section before cited.

It is true that in the report of the case in 9 Paige, 152, the fact is mentioned that the Mohawk Insurance Company had become hopelessly insolvent before the receiver was appointed ; but it is not stated that the receiver was appointed on that ground ; and I cannot imagine that in a suit so severely contested as that case was throughout, any such mistaken assumption in regard to the origin of his appointment could have prevailed in the minds of either the counsel or the court.

With this authority confirming my own conviction of what is the true construction of the statutes, I must hold that this receiver has all the powers conferred by the 42d section of the article relative to proceedings against corporations in equity, and the other sections which it refers to and adopts.

2. If this were otherwise, the cases of the Franklin Bank and the Bank of Columbia show to what a great extent the brief language of the 36th and 37th sections of that article carries the power of the court in these receiverships.

So the order made by the Chancellor under which this complainant was appointed receiver, directs the corporation to trans· fer and deliver to him, all their property real and personal, their equitable things in action and effects. It gives to him authority to demand, sue for and collect all debts and demands belonging to the corporation, to dispose of their personal property, and to demise their real estate.

3. The order therefore, independent of the question on section

42, authorizes this suit, provided the defendant's liability to fill up his stock, were a *demand* belonging to the corporation.

My conclusion in regard to the first proposition makes it unnecessary for me in this place to express any opinion on that point.

4. By the 69th section of the third article (2 R. S. 469,) receivers, are directed to proceed and recover sums which may be remaining due upon any shares of stock subscribed in the corporations of which they are receivers; and for that purpose they may file a bill in chancery or commence an action at law.

I did not understand the defendant's counsel as denying that this section extended to the complainant, if the 42d section of the previous article were deemed applicable to him. The Chancellor, in disposing of this receiver's petition against the stockholders, to which I was referred, (3 Barbour's Notes of the Chanlor's Decisions, 13, March 7, 1843,) merely declined to express any opinion as to the receiver's right to compel payment from the stockholders, whose stock was not paid in. He said that if the the receiver had such right, the order appointing him gives him all the necessary authority.

5. It is contended in behalf of the defendant, that if the receiver has any remedy against the stockholders separately, it must be by an action at law; and that if he proceeds in equity, it must be against all the stockholders equally. Section 69, allows the receiver to file a bill or to sue at law. And he may do either when *any share* remains unpaid, in order to recover the sum due thereon.

The language of the statute is as plain to maintain a separate suit in equity as at law. The concurrent remedy is expressly provided, it is wholly a statute remedy; and a court of law may with as much propriety say to a suitor for its benefit, that chancery was a more appropriate forum, as I can say to this complainant, that his case is one to which a court of law is well adopted, and therefore he is bound to proceed there.

By the seventh section of the general act relative to manufacturing incorporations, (3 R. S. 222, 2d ed.,) the stockholders are made *individually* liable for the debts of the corporation, to the extent of their respective shares of stock. That liability is quite

analogous to the defendant's. His is restricted to the amount remaining unpaid on his shares. The word, *individually*, in the section just cited, means *personally*, not severally.

Under that section it has been held by the Supreme Court that the liability is several and not joint. (*Bank of Poughkeepsie* v. *Ibbotson*, 24 Wend. 473 ; and 5 Hill, 461.)

In *Penniman* v. *Briggs*, Hopk. R. 300 ; S. C. on appeal, 8 Cowen, 387 ; one question was, whether under that section, there could be any bill in equity ; the section not mentioning the court in which the stockholders should be charged. The jurisdiction in this court was sustained, on the ground of the contribution among the many shareholders, who were made defendants.

This was before there was any statute giving equitable relief in express terms. It perhaps shows that the complainant might have joined all the stockholders in one suit, and there are many good reasons why that should have been done. But it does not show that he must unite them all in a single suit.

In *Hume* v. *The Winyaw and Wando Canal Co.*, 1 Carolina Law Journal, 217, also reported in 4 Amer. Law, Mag. 92, Chancellor De Saussure in an able and eloquent opinion held that the corporators were severally liable in equity to the creditors of the company ; independent of any statutory provision in regard to the court in which they should be prosecuted.

6. As to the objection that there are stockholders delinquent upon calls which the defendant has fully paid, whose arrears are more than sufficient to pay the debts of the corporation. I think it is erroneous to suppose that in these cases the sequestration can be limited to the amount of the debt of the creditor in whose suit it is ordered. It carries the whole corporate effects into the hands of the receiver. (*Morgan* v. *New York and Albany R. R. Co.*, 3 Barbour's Notes, 30, per Chancellor, May 2, 1843.)(a)

The corporation is deemed insolvent from its suffering the execution to be returned unsatisfied, and for aught that appears, its concerns are to be wound up.

I do not think that the receiver was bound to prove in this suit,

(a) Since reported, 10 Paige, 290.

the extent of the debts of the corporation. If he is acting oppressively in enforcing the liability of one stockholder, while he omits to collect of others who have paid in less upon their shares ; the defendant may by a cross bill, bring the latter before the court with the receiver; or he may by the action of the court, compel the receiver to enforce the liability of such delinquents, and on the final adjustment, receive back the excess, if he has paid any, on his shares. Such defendant has an undoubted claim for contribution, (*Judson* v. *Rossie Galena Co.*, 9 Paige, 603, 604,) although it may be involved in delay and difficulty in its practical results ; a consequence not unusual in complex partnership and corporate liabilities.

7. It is set up that Van Vechten the creditor, in whose suit the complainant was appointed, is himself liable upon stock which he subscribed, to more than the amount of his claim against the corporation ; and that this constitutes an equitable set off, and ought to defeat this suit.

Van Vechten's liability was before the Supreme Court in an action on his subscription, and the opinion of the court with a copy of which I was furnished, is adverse to its validity. I need not decide upon it. The receiver is the officer of this court, acting for all the creditors and stockholders, (*Davis* v. *Duke of Marlborough*, 2 Swanst. 125.) He is not the agent of Van Vechten, nor in any manner his representative exclusively. This suit is not Van Vechten's suit, and strictly it should not be prosecuted by his solicitor or counsel, (*Ryckman* v. *Parkins*, 5 Paige, 543 ; *Ray* v. *Macomb*, 2 Edw. Ch. R. 165.)

8. I have yet to notice some formal difficulties in the complainant's case.

He omitted to produce the proof of his appointment, which fact is put in issue by the answer ; and it is urged that he has not proved any assignment to himself as receiver.

As to the appointment, the evidence of it being upon the files of the court, I permitted the complainant to produce it subsequent to the hearing. It will be subject to the defendant's further objection, if any there be, upon its production.

The assignment to the receiver is not proved. The signature of the president is proved, and that the instrument has a seal to

it; but whether that be the seal of the president, or of the corporation, there is no evidence. The production of the assignment will not aid, because the seal cannot prove itself. The court cannot say upon inspection that it is the corporate seal of the rail road company; with any more propriety than it can say that the signature of the president is genuine upon a like inspection.

For all purposes in a court of law, the assignment to the receiver is no doubt proper, and in regard to real estate and the legal title, indispensable. I do not think that it is so important in equity.

Here the court, having ample power for the purpose, has sequestered the effects of this corporation, and through its officer, the master, has appointed a receiver of such effects. The order gives him full power to take possession of all the corporate property, and to sue and collect its demands. It also directs the company and its officers to assign, transfer and deliver such property to the receiver.

In my judgment, the effect of this order was to vest the property in the receiver, when he was appointed, as effectually *in equity*, as if the assignment had been made in due form. The latter operates only by force of the order. The court having ordered it, no sanction of a board of directors could be necessary to carry it into effect. The property is transferred by operation of law, by means of the order of the court; and equity looking at the substance, will hold the transfer accomplished which has been decreed. (See Edw. on Rec. 83; *In the matter of the Eagle Iron Works*, 8 Paige, 386; *Eldred* v. *Hall*, 9 ibid. 640.)

It has become our usual practice to have an assignment executed to receivers. This is not the practice in England. There the proceeding is deemed complete and effectual on the master's appointment and the filing of the requisite recognizance. (1 Smith's Ch. Pr. 628, 635.)

The complainant is entitled to a decree for the amount unpaid on the defendant's shares.

Under the circumstances, the decree will be without costs, and the complainant may in addition to the proof of his appointment, furnish evidence of the execution of the assignment to him, if he deems it advisable.

The case of Col. Pratt differs from the foregoing in this fact only, that his stock was divided, and full scrip issued for a part. This does not affect the creditors of the company, or other stockholders who did not assent to the arrangement. The law requires him to make the whole full stock, if that be necessary for the discharge of the corporate liabilities.

There will be the same decree as in the suits against the Messrs. Pentz.

