18 41.

Nathan
v.
Whitlock.

## NATHAN, receiver, &c. vs. WHITLOCK.

Where the directors of an insurance company agreed among themselves to take a majority of the stock and to give their stock notes for the same secured by an hypothecation of the stock, and after the company had become greatly embarrassed, one of the directors agreed with the president to give him $6000 if he would take his stock and substitute his own note in lieu of the stock note of such director, which was done accordingly; *Held*, that it was a fraud upon the creditors of the company, and the other stockholders who had paid for their stock; and that the receiver who had been appointed to wind up the affairs of the company was entitled to recover the amount of the stock note of the director thus given up, with the exception of the sum which had actually been paid by the president to the company out of the $6000 received by him as a premium upon his purchase.

A solvent stockholder who has given a stock note to a corporation for the purchase money of his stock cannot, upon the insolvency of the company, or in contemplation of that event, even with the consent of the directors, transfer his stock to an irresponsible person, and be discharged from his liability upon substituting the note of such person for his own; such an arrangement having the effect of a withdrawal of so much of the capital of the corporation, and being a violation of the statute to prevent fraudulent bankruptcies of incorporated companies.

Where a debt due to a corporation has been fraudulently discharged, a bill to obtain satisfaction of the debt, against the orignal debtor, is properly filed in the name of the receiver who has been appointed by the court of chancery, under the provisions of the revised statutes, to wind up the affairs of the company.

If some of the stockholders of a corporation have paid for their stock, and others have secured the amount of their stock by stock notes, those who have paid for their stock have a right to insist that the receiver who has been appointed to close up the affairs of the company shall collect the stock notes, or so much thereof as is necessary to equalize the losses among all the stockholders rateably.

April 6. THIS case came before the chancellor upon an appeal by the defendant from a decree of the vice chancellor of the first circuit. The proceedings and proof showed it to be one of the innumerable cases of frauds upon creditors, and many innocent and unsuspecting stockholders of incorporated companies, in the city of New-York, committed by those who obtained the control of a great number of those institutions in 1825 and 1826. The facts in the case

were substantially as follows: The Mohawk Insurance Company was incorporated on the 3d of April, 1824, with a capital of $500,000 divided into shares of $20 each; and the act of incorporation required the whole capital to be subscribed and paid before the company should be allowed to commence business. The affairs of the corporation were to be managed by fourteen directors, a majority of whom was to constitute a board and to be competent to transact all the business of the corporation; such directors to be elected annually on the second Monday in January, by the stockholders, the holder of each share of the stock being entitled to one vote. The first directors were named in the act of incorporation, among whom was the defendant Whitlock, and J. D. Brown who was afterwards president of the company. The board of directors at their first meeting on the 8th of April, 1824, resolved that they would reserve a majority of the stock for themselves, and that books of subscription for the residue of the stock should be opened for the public under the direction of a committee of the board. And to enable them to keep the control of the institution without paying any thing in fact for their stock, the directors afterwards resolved that the shares taken by the directors should be held on the following terms: The whole amount or par value of their stock to be loaned to them respectively by the company at seven per cent interest; or if the director paid ten per cent towards his stock, the residue of the par value thereof was to be loaned to him at six per cent interest. But that no director should sell his stock to any others than his co-directors; and that upon retiring from the direction, such director should be allowed by the remaining directors the actual value of his stock, to be ascertained from the books of the company. At a subsequent meeting of the board, the interest on the stock notes of the directors was fixed at six per cent in all cases.

Thirteen of the directors, Rathbone one of the directors named in the charter having resigned, subscribed for 1042 shares of the stock each, constituting a majority of

the shares. And the board decided that the company should go into operation on the 1st of May, 1824, and that the stock, if any, which should not then be subscribed for, should be assumed by the directors for apportionment to the public. Whitlock, the defendant, gave to the company his note for $20,840, payable on demand with interest, at the rate of six per cent, and hypothecated his 1042 shares of stock to the company to secure the payment of the note. On the 3d of June, 1825, the company insured a vessel for J. Webb & Co. to the amount of $19,000; which vessel was stranded and lost on the 9th of July thereafter; upon which insurance they afterwards recovered a judgment against the company for $23,874.33, including interest and costs. The company also sustained other losses and became embarrassed, and its credit became impaired. On the 12th of April, 1826, Whitlock, the defendant, then being a director of the company, negotiated with Brown, the president, to sell him his stock and to take up his stock note and to substitute Brown's note in lieu thereof; and as a consideration therefor, he agreed to give to Brown $6000, in good paper. And on the 14th of April this arrangement was consummated, without the concurrence of the board of directors, by the transfer of the stock to Brown and the giving up of the stock note of Whitlock for $20,840, held by the company. Brown substituted his own note to the company for the like amount, and hypothecated the same stock as security for the payment thereof; and Whitlock gave to Brown two notes, one for $1500 and the other for $4500, as the consideration agreed to be given for making this arrangement. Brown's note never was paid; but some of the directors of the company when Whitlock's note for $4500 became due, obtained it from Brown and received the amount thereof for the institution. The company having become hopelessly insolvent, and the execution upon the judgment of Webb & Co. having been returned unsatisfied, a petition was presented to the vice chancellor for the appointment of a receiver to wind up the affairs of the company, under the provisions of the re-

vised statutes in such cases, and the complainant was appointed such receiver. He thereupon filed the bill in this case against Whitlock, to obtain satisfaction of the stock note which had been given up to him under the arrangement with Brown. The vice chancellor came to the conclusion that the arrangement by which that note was given up was illegal and unauthorized, and was a fraud upon the creditors of the company and the stockholders who had paid for their stock. He therefore decreed payment of the note; deducting therefrom the amount of the $4500 given to Brown, the avails of which had actually gone into the funds of the company.

*J. Anthon & G. Griffin,* for the appellant. The only question presented by the bill in this cause is, whether, at the time it was filed, the defendant was indebted to the Mohawk Insurance Company, for the whole or any part of the debt of $20,840, for which he gave his note to the company on the 1st of May, 1824. Any supposed fraudulent organization of the company, or any of its transactions in relation to other matters except the alleged indebtedness of the defendant, can have no legitimate influence upon the decision of the cause. The complainant having been appointed receiver of the company, at the suit of a judgment creditor, and the bill having been filed by him as such receiver, against the defendant as a debtor of the company, presupposes a due organization of the company under its charter. The bill does not attempt to charge the defendant upon any other ground than that of his alleged indebtedness to the company. A different bill and different parties are necessary to charge the defendant for any improper conduct as a director. The complainant as receiver of the company has no power or authority to question its due organization, or to investigate the conduct of the board of directors, or to disavow or annul any of the proceedings of the company. As such receiver, the complainant can maintain no suit at law or in equity for the recovery of any estate, debts or things in action, where the corpora-

tion itself could not maintain such suit. If the corporation could not maintain this suit against the defendant, the receiver cannot. (2 *R. S.* 379, § 42, 2d ed. *Id.* 383, § 68. 1 *Id.* 798, § 7, *subd.* 1.) At the time of filing the bill, the defendant was not indebted to the Mohawk Insurance Company upon his note for $20,840, or for the demand for which it was given. The company could maintain no suit against him upon that demand, either at law or in equity. The sale and transfer by the defendant of his stock to Brown, the president of the company, was a fair transaction, entered into in good faith, for the purpose of accomplishing a lawful object, without any fraudulent or dishonest or other unlawful intent. The transaction was not secret ; it was open, sanctioned by the finance committee, entered in detail on the books of the company, and was well known to the directors, or a majority of them. The defendant had no knowledge that the company was insolvent. He believed that Brown was a merchant in good credit and standing.

The substitution of Brown's note for the defendant's, and the giving up of the defendant's note to him, was fully authorized and assented to by the company. The president had authority to make the substitution. (*Charter of the Company, Laws of* 1824, *p.* 161, 2, § 10.) The finance committee had full power to and did assent to it on the part of the company. (*Idem, p.* 160, 1, 2, § 8, 10.) It was known to a majority if not all of the directors, and has been acquiesced in by the company for seven years. The claim was barred by the statute of limitations before the commencement of this suit. (2 *R. S.* 224, § 18, 2d ed. *Id.* 228, § 49. 2 *Vesey, sen.* 299. 3 *Vesey, jun.* 402. 6 *Vesey,* 573, 575. 2 *Bro. Parl. Cas.* 44, 49. 9 *John. Ch. Rep.* 595, 6. 3 *Paige's Rep.* 481. 2 *Id.* 397. 6 *John. Rep.* 559, 564. 3 *Wendell,* 653. 9 *Id.* 562, 3. 18 *John. Rep.* 560. *Freem. Ch. Rep.* 48, *note* 2. 2 *T. R.* 189. 2 *Kent's Com.* 616. *Story's Agency, p.* 248, §§ 254, 255, 239, 250. 12 *Wheat.* 69, 70, 73, 83, 85, 86. *Paley on Agency,* 4. 7 *John. Rep.* 161. 16 *Id.* 189. *Paley on Agency,* 143, 145, 172. 12 *John. R.* 306. 3 *Chit. Com.*

*1841.*

*Nathan*
*v.*
*Whitlock.*

*Law*, 198. 4 *Durn. & East*, 217. 4 *Bing. R.* 722. 22 *Wendell*, 341, 342. 8 *John. R.* 202.)

*F. B. Cutting*, for the respondent. The appellant, William Whitlock, jun. being justly indebted to the Mohawk Insurance Company in the sum of $20,840, either for the amount of his subscription to the capital stock thereof, or for money lent and advanced by the company to him on the first day of May, 1824, gave his promissory note to the company, payable on demand, with interest at the rate of six per cent, and as collateral security transferred to the company, in its corporate name, 1042 shares of the capital stock thereof. This note, together with the collateral security, became part of the capital of the company, and was in equity held by the directors in trust for the payment of the corporate debts and for the benefit of the stockholders. (*Scott* v. *The Eagle Fire Company*, 7 *Paige*, 198. *Depeyster* v. *The American Insurance Company*, 6 *Id.* 486. *Wood* v. *Dummer*, 3 *Mason*, 308. 2 *Story's Eq.* 9, § 1252. 6 *Paige*, 340. 4 *Id.* 127, 134.) Isaac Webb & Co. were creditors of the company, and entitled to payment out of its capital and effects. Brown had no right, either in his official or private capacity, to surrender to Whitlock his note for $20,840. The bargain between them (they being directors and trustees of the company,) was a fraud upon the company, its creditors and stockholders. (*Reed* v. *Bank of Newburgh*, 6 *Paige*, 337,) The abstraction by Brown of Whitlock's note being fraudulent, the Mohawk Insurance Company had a valid claim against Whitlock for the amount due by him, with interest; and the receiver, Seixas Nathan, is authorized to sue for and collect the same for the benefit of the creditors and stockholders of the said company. Neither the Mohawk Insurance Company nor its board of directors ever authorized the arrangement between Brown and Whitlock. Even if the board of directors had assented thereto, such assent could not have validated the transaction. An assent, with a knowledge of the insolvency of Brown, would have been a fraud upon

the bona fide creditors and the innocent stockholders of the company. If the directors had authorized the consummation of the bargain in ignorance of the insolvency of Brown, such an assent obtained through and in consequence of such ignorance, would not have validated the transaction. The committee on finance had no authority to authorize the transaction. (*Act incorporating the Mohawk Ins. Co., Sess. Laws of* 1824, *ch.* 154, § 4, 7, 8. *Hosack* v. *College of Physicians of N. Y.,* 5 *Wendell,* 547, 550. *Bank Commissioners* v. *Bank of Buffalo,* 6 *Paige,* 497, 504.) That committee never did authorize or assent to that arrangement.

If any person, who was a director of the company, expressed any opinion in relation to the matter, it was in his individual and not in his official capacity. (*National Bank* v. *Norton,* 1 *Hill's R.* 579. *Fulton Bank* v. *N. York and Sharon Canal Co.* 4 *Paige,* 127, 136. 2 *Phil. Ev. note* 174, *p.* 169.) If any director did express an opinion favorable to the substitution of Brown's note for Whitlock's, it must have been in ignorance of the insolvency of Brown. Whitlock and Brown being directors, were trustees for the stockholders and creditors of the corporation, and had no right to traffic with the trust funds for their own benefit. The transaction between them ought for that reason to be annulled. (3 *Vesey,* 740, *note* 1. 2 *Story's Eq. Pl.* 502, 506, 510, 524, 752.) It was unlawful for Whitlock to withdraw any part of the capital stock, or for Brown to pay or surrender any part of the capital to Whitlock. (*Laws of* 1825, *p.* 448, § 2, 6. The complainant was the proper person to bring this suit. (2 *R. S.* 464, § 42. *Idem,* 469, § 67, 68. *Idem,* 42, § 7. 1 *Anstr. R.* 109, 113. 12 *Vesey,* 136, 158. 4 *Dessaus.* 651, 677, 702, 705, 715. 6 *John. Ch. R.* 132, 137. 1 *McCord's Ch. R.* 156, 161. 3 *Paige,* 231, 2. 9 *Mass. R.* 423. 2 *R. S.* 383, § 67—469, *old ed. Story's Eq. Pl.* 191, 2, § 216, 217. *Id.* 145, § 149.)

THE CHANCELLOR. I entirely concur in the conclusion at which the vice chancellor arrived in this case, that the giving up of the note, and the transfer to Brown of the stock which had been hypothecated for its security, was

illegal and a fraud upon the creditors of the corporation. Whitlock, as a director of the corporation, who had from the beginning taken an active part in the transactions of the company, must be presumed to have known its situation; and that neither Brown nor even the directors of the company had the right to make such an arrangement with him. It was in fact an arrangement to enable Whitlock to withdraw a part of the capital stock of the company; this note being the substitute for the money paid in, or which should have been paid in, on his stock. Such arrangement was therefore in direct violation of the provisions of the second section of the act of April, 1825, to prevent fraudulent bankruptcies by incorporated companies. (*Laws of* 1825, *p.* 448.) The vice chancellor is right also in supposing that the board of directors of the company never assented to this arrangement; even if their assent to such a fraud upon the creditors of the company, and upon the law, could have validated the transaction. And certainly there could be no implied assent in such a case, which would ve the effect to discharge Whitlock from his liability to creditors of the company for the amount of his stock

e receiver is the proper person to bring the suit, as the legal title to all the property of the company; sted, by the revised statutes, with all the rights law to trustees or assignees of insolvent debtors. (&      464, § 42. *Idem*, 469, § 67, 68.) He is therefore e     ly authorized to sue in his own name for this debt; which debt is still due to the corporation, notwithstanding the note was given up without authority. (2 *R. S.* 42, § 7.) This is not a proceeding to charge the defendant as a director or stockholder of the corporation on the ground that he has, as such director or stockholder, made himself personally liable to the creditors; so as to make it necessary for Webb & Co., to proceed against him under the provisions of the 43d, 44th, and 45th sections of the article of the revised statutes relative to proceedings against corporations in equity. (2 *R. S.* 464.) But it is a suit to collect a debt; which is still due from him to the corpo-

ration, notwithstanding the fraudulent and unauthorized agreement under which the note, which was once the evidence of such indebtedness, had been given up. It is therefore a case in which the innocent stockholders of the corporation would have an interest in the recovery of the amount of the note, even if there were other funds of the corporation sufficient to pay its debts. For where there is a loss upon the stock, such of the stockholders as have paid for their stock have a right to insist that those who have given stock notes only shall pay such notes to the receiver ; so that all may share rateably in the loss which has fallen upon the stockholders generally.

I have no doubt that the decree appealed from was right ; and it must be affirmed with costs.(a)

(a) This decision was affirmed, on appeal to the court for the correction of errors, in December, 1842.