## Case No. 1,779.

### BRADLEY et al. v. FARWELL et al.

[Holmes, 433.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1874.

CORPORATIONS—DISSOLUTION—ASSETS—RIGHTS OF CREDITORS—BANKRUPTCY—RECOVERY OF ASSETS BY ASSIGNEES—PREFERENCE BY DIRECTORS.

1. The directors of an insolvent corporation, while it is under their management, hold the position of trustees of its assets for the benefit of its creditors, and, if themselves creditors, cannot secure to themselves any preference or advantage over other creditors.

[Cited in Corbett v. Woodward, Case No. 3,223; Hills v. Stockwell & Darragh Furniture Co., 23 Fed. 437; Lippincott v. Shaw Carriage Co., 25 Fed. 586; Adams v. Kehlor Milling Co., 35 Fed. 435.]

2. A transfer of the assets of an insolvent corporation, according to vote of its directors, to a partnership of which one of the directors is a member, made more than six months before proceedings in bankruptcy against the corporation, as payment of, or security for a debt due the partnership from the corporation, to the prejudice of other creditors, may be set aside, and the property so transferred recovered, in a suit in equity for that purpose brought by the assignees in bankruptcy of the corporation.

In equity. Bill by [Charles S. Bradley, Charles R. Chapman, and George M. Barnard] the assignees in bankruptcy of the Boston, Hartford, and Erie Railroad Company, to recover property of the corporation alleged to have been transferred to the defendants [Henry N. Farwell, Asa Farwell, and Samuel Hall, Jr.], then partners, to secure a claim of the partnership against the corporation, in pursuance of votes of the board of directors of which the defendant Farwell was a member, after the corporation had become insolvent, and in fraud of its creditors. The defendants filed a general demurrer to the bill. The material facts of the case are stated in the opinion. [Demurrer overruled.]

C. S. Bradley and J. J. Storrow, for complainants.

It is well settled that the managing officers and directors of a corporation hold relations of trust towards the individuals interested, and that the rules of courts of equity with regard to the administration of trusts apply to such officers. They are not trustees in the narrow sense of being intrusted with the legal title to property. They are intrusted with large general powers of control and management. It is with regard to the exercise of these powers that their character and responsibilities are similar to those of trustees, and that the law of trusts applies. Benson v. Heathorn, 1 Younge & C. Ch. 343; Bowes v. City of Toronto, 11 Moore, P. C. 518, 522; European & N. A. R. Co. v. Poor, 59 Me. 277; Heath v.

---

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

Erie R. R. [Case No. 6,300]; Dodge v. Woolsey, 18 How. [59 U. S.] 341; Hayes v. Kenyon, 7 R. I. 142. The cardinal doctrines relating to all fiduciary relations, and particularly to the powers and duties of corporation managers, are, that the trust shall be exercised; (1) in good faith and honesty; (2) in furtherance of its true purpose; (3) in no respect for the personal advantage of the trustee.

In this case it is clear; (1) that two of the defendants, while holding positions of trust, received an advantage, not only in preference to, but to the exclusion of, other persons similarly situated with reference to the property of this corporation; (2) that this property was transferred from the corporation to them by means of the exercise of those powers of control and management which had been intrusted to them in common with others; (3) that they were not only cognizant of, but as such trustees actively participated in, that exercise of the trust powers which gave them this private gain.

The question is, whether, when a corporation has become insolvent, it is competent for the directors to transfer to one or more of their number, who are creditors, all the assets of the corporation substantially, to the entire exclusion of other creditors. The doctrines of equity already stated answer this question. Curran v. Arkansas, 15 How. [56 U. S.] 304; Koehler v. Black River Falls Iron Co., 2 Black [67 U. S.] 715; Drury v. Cross, 7 Wall. [74 U. S.] 299; Richards v. New Hampshire Ins. Co., 43 N. H. 263; Paine v. Lake Erie R. Co., 31 Ind. 353; Gaslight Imp. Co. v. Terrell, L. R. 10 Eq. 168, 176; Sykes' Case, L. R. 13 Eq. 255; Gilbert's Case, 5 Ch. App. 559. This is a bill in equity; and repeated adjudications in England have established that contracts between a corporation and its directors, which are good at law and under the express provisions of the joint-stock companies' act of 1845 and 1862, are invalid in equity, upon the principles of the law of trust as administered in chancery. Foster v. Oxford, W. & W. Ry. Co., 13 C. B. 200; Wordsw. Joint-Stock Co. (Ed. 1865) Append. p. 128; Id., p. 159; Aberdeen Ry. Co. v. Blakie, 1 Macq. 461; Southampton Dock Co. v. Southampton Harbour & Pier Board, L. R. 14 Eq. 595.

Benj. F. Butler, for defendants.

The bill nowhere sets out that the bonds and assignment, or either, now are, or at the time of demand or filing of the bill were, in possession of the defendants. Nor in what the alleged fraud against creditors consists, or the means or intent with which it was done, except the fact of insolvency of the road at the time of the transfer of the securities. Nor that the defendant Farwell acted or voted in the meetings of the executive committee, or at the meeting of the directors, upon the claim or in the matter in which he was interested; and the recital as to his and Hall's connection with the road would seem to be only for the purpose of inferentially affecting defendants with the knowledge of the insolvency of the bankrupt at the date of the transaction, although that is alleged afterwards specifically.

The question presented by the demurrer is; Are there any such allegations of fact as show a fraud upon the creditors by Farwell & Co., either at common law or within the provisions of the bankrupt act? The bill does not deny that A. G. Farwell & Co. were bona fide creditors of the bankrupt in a much larger amount than the collateral security received, but admits the same; does not deny the regularity of the meeting at which the accounts between the parties were settled, or the proper auditing of those accounts, but admits the same. The case, then, is presented of a transfer of property more than nine months before the petition in bankruptcy, by the bankrupt while insolvent, as security to a creditor having then present claims, the security being less in amount than the indebtment of the insolvent, without any allegation of contemplated bankruptcy. Taking the strongest view of the transaction, such a proceeding was only a preference by an insolvent debtor of one of his creditors. It is submitted that such preference is not void or fraudulent at common law. This is believed to be so well settled as not to need citation of authorities. Hale v. Allnutt, 36 Eng. Law & Eq. 383. Such preference is not against the bankrupt law. To constitute a fraudulent preference under the bankrupt act, and voidable by the assignees, it must be shown to have been made within four or six months of the filing of the petition; that it has been made with a view to give a preference; that the debtor must be in fact insolvent; that the person receiving the conveyance must have reasonable cause to believe the debtor insolvent; and that the conveyance was made in fraud of provisions of the bankrupt act, and in view of contemplated bankruptcy proceedings. Contemplation of bankruptcy is settled to mean something more than insolvency. The act of the bankrupt in making the preference must be voluntary, and not made under pressure of demand from the creditor. Such preferences have always been held to be involuntary where made either by threat of suit by the creditor, or where payment has been requested with the present ability of the creditor to bring suit. The time of four months, fixed by the thirty-fifth section of the bankrupt act, during which all preferences made by the bankrupt are void; and conveyances made for a like purpose by the bankrupt, being insolvent or in contemplation of insolvency, within six months before filing a petition, with the limitation that such transfer or conveyance is made with a view to prevent his property coming to his assignee or being distributed under the act, is an exclusion of all pay-

ments or transfers made under like circumstances before the time limited by the act. Otherwise, the words of limitation would be valueless.

SHEPLEY, Circuit Judge. This case is presented on demurrer to the bill in equity. The complainants allege that the Boston, Hartford, and Erie Railway Company, a corporation duly established by law, was, upon the second day of March, 1871, duly adjudicated a bankrupt, upon a petition in bankruptcy duly filed, before the district court of the United States for the district of Massachusetts sitting in bankruptcy, on the twenty-second day of October, 1870. The bill alleges the appointment of the complainants as assignees, and their acceptance of and qualification under the trust; that the defendants, Henry N. Farwell, Asa Farwell, and Samuel Hall, Jr., composed the firm of A. G. Farwell & Co.; that Henry N. Farwell was a director in the Boston, Hartford, and Erie Railroad Company from July 17, 1867, to Dec. 21, 1869, and vice-president thereof, and a member of the executive committee of said board of directors; that between the thirtieth day of November, 1869, and the ninth day of December, 1869, the defendants presented to the treasurer and the executive committee of said corporation an account of certain transactions between the defendants in their firm of A. G. Farwell & Co., and the corporation, claiming therein and thereby an amount due to them from the corporation of over a million dollars; that said account was presented at a meeting of the executive committee on the eighth day of December, 1869, at which meeting the defendant, Henry N. Farwell, was present as a member of the committee; that at said meeting the executive committee voted "nem. con." to approve the accounts of A. G. Farwell & Co. with the corporation, and directed the treasurer to settle with them on the basis of said items, and also voted to instruct the treasurer to settle the account of A. G. Farwell & Co., thus approved, by giving four notes for the sum of two hundred thousand dollars each, one on demand, and three others on time, with interest, and to place as collateral to said notes seven hundred thousand dollars in Berdell bonds. The bill further charges that a meeting of the executive committee was held on the ninth day of December, 1869, Henry N. Farwell being present as a member thereof, at which meeting a vote was passed instructing the treasurer to draw an order on Baring Brothers for any amount due, or that may become due, on the three millions of bonds of the state of Massachusetts by the corporation committed to them for negotiation or sale, in favor of A. G. Farwell & Co., said amount drawn for to be collateral to the claims said Farwell & Co. held against the corporation; that subsequently at a meeting of the directors, said Farwell being present as a director, it was first voted to approve

all the doings of the executive committee shown on their records; that then the resignation of said Farwell as director was presented but not accepted, and it was voted to lay the same on the table; that then a vote was passed instructing the treasurer to draw an order on Baring Brothers & Co. in favor of A. G. Farwell & Co., for any amount due, or that may be due, in their hands to the credit of the company, growing out of any sales made or that may be made of the scrip delivered to the company by the state of Massachusets, under the act of May 27, 1867, over and above eighty per cent sterling on said bonds, such amount when received to be collateral to, or as payment of, the claims of Farwell & Co. against the company; that, on the seventeenth day of December, Hall, one of the defendants, acting as treasurer of said corporation, in pursuance of the foregoing votes, and having no other authority, executed and delivered to the firm of A. G. Farwell & Co. the notes specified in the vote of Dec. 8, 1869, and delivered also to them the seven hundred thousand dollars of bonds described in said vote, and also a draft on Baring Brothers & Co. for the proceeds of the sale of the scrip delivered to the company by the state of Massachusetts over and above eighty per cent sterling on said bonds. The bill further charges, that from and after the first day of January, 1869, until after all said acts before charged, the said Henry N. Farwell was, and continued to be, and acted as, a director in said company, and as a member of the executive committee, and attended a meeting of said committee on the eighteenth and a meeting of the directors on the twentieth of said December; that on the thirtieth day of November, 1869, and long prior thereto, and ever since, the said corporation was and has been utterly insolvent and bankrupt, and did not pay, and was unable to pay, and has not since paid, its debts; and that for a period of more than fourteen days prior to said day it had failed, refused, and been unable to pay its commercial and business paper, and was insolvent in fact, and bankrupt within the meaning of the bankrupt act of the United States. The bill then charges that between the first and seventeenth days of December, 1869, the corporation was largely indebted, and had no personal property except the bonds aforesaid and the funds in the hands of the Barings, except such as was mortgaged for more than its value. By reason of all which it is alleged that the transfers and assignments aforesaid were made and received in fraud of the creditors of said bankrupt corporation, whereby it is alleged, by force of the fourteenth section of the bankrupt act and otherwise, and by force of the principles by which courts of equity act, the same became and now are vested in the complainants.

The case presented in the bill is that of a transfer or attempted transfer by the direct-

ors of an insolvent corporation to one of their own number, as security for a debt due to him from the corporation, of all the available assets of the corporation, more than nine months before the petition in bankruptcy. The time which elapsed after this preferential payment to one creditor before the commencement of the proceedings in bankruptcy exceeds the time limited in the thirty-fifth section of the bankrupt act, during which all preferences made by the bankrupt are voidable. The transfer cannot therefore be declared void under the provisions of that section. If the transaction was, as contended on the part of the defendants, nothing more than a preference by an insolvent debtor of one of his creditors, such preference is not void or fraudulent at common law, and, with no other element of trust or fraud in the case, will not be set aside by a court of equity.

The real issue presented for the consideration of a court of equity in this case is, whether the managing officers and directors of this insolvent corporation held such a relation of trust to the funds of the insolvent corporation for the benefit of creditors and all persons and parties interested, that, according to the principles applied by courts of equity to cases of like trusts, they are to be held guilty of a breach of trust by securing an advantage to themselves not common to the other creditors, and by providing for the payment of a debt, or a large part of the debt, due to a director from the assets of the corporation, to the entire exclusion of the payment of any and all other debts due. from the corporation.

Courts of equity were established for the purpose, among others, of enforcing the execution of such matters of trust and confidence as are binding in conscience, though not cognizable in a court of law. Such courts will not permit trustees, in the exercise of the powers of their trust or in dealing with the trust estate, to obtain any benefit or advantage for themselves to the injury or prejudice of those for whom they are acting in the fiduciary relation, or to protect, indemnify, or pay themselves at the expense of those who are similarly situated in relation to the fund. The trustee is an agent acting for others, and he cannot be permitted to act adversely to his principals. To guard against the hazard of abuse of the trust and to remove the trustee from temptation, the rule in equity permits the cestui que trust at his own option, and without showing essential injury, to set aside the transaction where the trustee is both vendor and vendee, upon the ground that, however innocent the purchase may be in the given case, it is poisonous in its consequences.

The relation between the directors of a corporation and its stockholders is that of trustee and cestui que trust. Butts v. Wood, 38 Barb. 188; York & N. M. Ry. Co. v. Hudson, 19 Eng. Law & Eq. 365, 16 Beav. 485; Scott v. Depeyster, 1 Edw. Ch. 513; Verplank v. Mercantile Ins. Co., 1 Edw. Ch. 85; Great Luxembourg Ry. Co. v. Magnay, 25 Beav. 586; European & N. A. R. Co. v. Poor, 59 Me. 277; Benson v. Heathorn, 1 Younge & C. Ch. 343; Sawyer v. Hoag, 17 Wall. [84 U. S.] 610; Aberdeen Ry. Co. v. Blakie, 1 Macq. 461. As directors are intrusted with the general management and control of the affairs and property of the corporation, this management and control must be exercised by them in the character of trustees, and subject to responsibilities under the law of trusts imposed upon those who have assumed, and are consequently under obligation faithfully to execute, a trust. They are not merely trustees for the stockholders. Without considering their duties and obligations in other respects to the state, the community, and other parties interested who may resort to courts of law or equity to compel a faithful performance of their trust, we need now only consider, in the case of an insolvent corporation, what their relation is to the creditors of the corporation and to the funds available for the payment pro tanto of corporate debts. In case of the insolvency of a corporation, its assets become a trust fund for the benefit of creditors while under the management of its officers. In Curran v. Arkansas, 15 How. [56 U. S.] 307, Mr. Justice Curtis, delivering the opinion of the court, speaking of an insolvent banking corporation, says: "The assets of such a corporation are a fund for the payment of its debts. If they are held by the corporation itself, and so invested as to be subject to legal process, that may be levied on by such process. If they have been distributed among stockholders, or gone into the hands of other than bona fide creditors or purchasers, leaving debts of the corporation unpaid, such holders take the property charged with the trust in favor of the creditors, which a court of equity will enforce, and compel the application of the property to the satisfaction of their debts. This has often been decided, and rests upon the plainest principles."

Was the property of this insolvent corporation transferred to Farwell & Co. under such circumstances as relieved it from the trust in favor of the creditors? Unquestionably the transaction cannot be considered as a breach of trust or as a constructive fraud, merely on the ground that it was a preference of one creditor over the other creditors of the corporation. Simply on the ground of such a preference the transaction is not subject to be impeached at common law, or, under the circumstances of this case, under the provisions of the bankrupt act. If Farwell & Co. take this property charged with a trust in favor of the creditors which a court of equity will enforce, it is not upon the ground that as creditors alone, in their capacity as creditors, they were preferred creditors, but on the ground that, in the trust relation they held to the corporation

and its funds, they could not equitably, by virtue of that relation, and in the exercise of the trust powers, secure for themselves such a benefit, advantage, and preference over other creditors with like claims, as any other creditor who stood in no trust relation to the fund might legally and equitably secure. In the case of Koehler v. Black River Falls Iron Co., 2 Black [67 U. S.] 720, where the directors of a corporation in embarrassed circumstances had secured debts due to three or four of their own number to the prejudice of other creditors, Mr. Justice Davis, in delivering the opinion of the supreme court of the United States, says: "Directors cannot thus deal with the important interests intrusted to their management. They hold a place of trust, and by accepting the trust are obliged to execute it with fidelity, not for their own benefit, but for the common benefit of the stockholders of the corporation. In executing this mortgage, and thereby securing to themselves advantages which were not common to all the stockholders, they were guilty of an unauthorized act, and violated a plain principle of equity applicable to trustees." In Drury v. Cross, 7 Wall. [74 U. S.] 299, where directors of a corporation had secured, with the property of the corporation, the debts upon which they were liable as indorsers, by a conveyance which operated to deprive all the other creditors of any security, the court say: "The transaction which this case discloses cannot be sustained in a court of equity. The conduct of the directors of this railroad company was very discreditable and without authority of law. It was their duty to administer the important matters committed to their charge for the benefit of all parties interested, and in securing an advantage to themselves not common to the other creditors they were guilty of a plain breach of trust. To be relieved from their indorsement they were willing to sacrifice the whole property of the road. Bound to execute the responsible duties intrusted to their management with absolute fidelity to both creditors and stockholders, they nevertheless acted with a reckless disregard of the rights of creditors as meritorious as those whose paper they had indorsed."

That a court of equity will not suffer an injury to the creditors or stockholders, resulting from such a breach of trust on the part of the directors, to pass without a remedy, is well settled in the most carefully considered decisions of courts of equity, both in England and this country. York & N. M. Ry. Co. v. Hudson, 19 Eng. Law & Eq. 361; Charitable Corp. v. Sutton, 2 Atk. 404; Gas Light Imp. Co. v. Terrell, L. R. 10 Eq. 168; Gilbert's Case, 5 Ch. App. 559; Sykes' Case, L. R. 13 Eq. 255; Hodges v. New England Screw Co., 1 R. I. 340; Richards v. New Hampshire Ins. Co., 43 N. H. 263; Nathan v. Whitlock, 3 Edw. Ch. 215, 9 Paige, 152; Hightower v. Thornton, 8 Ga.

493; Nevitt v. Bank of Port Gibson, 6 Smedes & M. 513; 2 Story, Eq. Jur. § 1252; Sawyer v. Hoag, 17 Wall. [84 U. S.] 610.

Such a result necessarily follows when it is admitted that the directors of a corporation are trustees, and that in case of an insolvent corporation the property of the corporation, while under the management of these trustees, is a trust fund for the benefit of creditors. The fiduciary relation between the directors and the creditors being established, and the fact that the trustees in dealing with the trust fund have secured to themselves a benefit or advantage over the creditors, or a benefit or advantage to themselves as creditors over and above the other creditors, taints the transaction and invokes the aid of a court of equity to see to the right execution of the trust. Not that the trustees cannot prefer one creditor to the others at common law and outside of the provisions of the bankrupt act, but that, in equity, a trustee cannot contract with himself as he may with third parties. If he exercises in his own favor the powers he may rightfully exercise in favor of another, the court does not stop to inquire whether he gained or lost. It is enough that the beneficiary is dissatisfied with the transaction for the court to set the transaction aside without requiring the beneficiary to prove actual loss or actual fraud. The principles applicable to such cases are well stated in the case of European & N. A. R. Co. v. Poor, above cited. In that case, Chief Justice Appleton says: "It is not that in particular instances the sale or the purchase may not be reasonable, but, to avoid temptation, the agent to sell is disqualified from purchasing, and the agent to purchase, from selling. In all such contracts the sales or the purchases may be set aside by him for whom such agent is acting. The cestui que trust may confirm all such sales or purchases, if he deems it for his interest. The affirmance or disaffirmance rests with him; and the trustee when buying trust property from, or selling it to, himself, must assume the risk of having his contracts set aside if the cestui que trust is dissatisfied with his action."

It is true that the directors do not hold the title to the corporate property in trust. The title is in the corporation; but their power of management, disposition, and sale is a trust power, and the same principles apply to the execution of trust powers as to the dealings with trust estates. In Sawyer v. Hoag, Mr. Justice Miller, speaking of the doctrine that the capital stock of a corporation is a trust fund for the benefit of the general creditors of the corporation as a doctrine of modern date, very pertinently adds: "When we consider the rapid development of corporations as instrumentalities of the commercial and business world in the last few years, with the corresponding necessity of adapting legal principles to the new and varying exigencies of this business,

it is no solid objection to such a principle that it is modern, for the occasion for it could not sooner have arisen." The doctrine, however, is not a modern doctrine in courts of equity. What is of comparatively modern date is the application of old and well-settled doctrines of equity applicable to the exercise of trust powers and duties to the new state of facts growing out of the rapid development of corporations. As new trusts are created, courts of equity apply to the modern trusts the ancient principles applicable to all trusts in the same manner as, when railways and telegraphs were first constructed, courts both of law and equity applied to railway and telegraph companies the same principles they had previously applied to like corporate bodies.

The vast increase of corporate property and the immense accumulation of corporate liabilities at the present time, and the consequent dependence of both stockholders and creditors upon the fidelity with which the managers of these corporations exercise the powers of their trust, would seem imperatively to require that the salutary rules so rigidly enforced by courts of equity in other cases of fiduciary relation should not be relaxed in this class of cases, where the trust powers are of such magnitude and the consequences of a breach of trust so disastrous. Especially in the case of insolvent corporations are the acts of the managing officers to be free from the imputation of having been influenced by the consideration of any interests adverse to those they are bound only to regard. Standing in a fiduciary relation, as it were at the bedside of a dying patient, if they are subsequently found in possession of a portion of his effects, they must show title by a conveyance untainted by the exercise of that power which the trust relation gave them to influence the disposition made by the decedent of his property in their favor and to the prejudice of others having equal claims to the inheritance. If it be claimed, as it seems practically in some cases to be claimed, that directors occupy a position where they have an opportunity and a right to protect first their own interests, the answer to be given is the one which was given to a similar claim which was set up in defence in the case of Gaslight Imp. Co. v. Terrell, previously cited. There the court answered that a preference to a creditor who was a stranger was only an undue preference, while the preference of a director who was also a creditor introduced the added element of a taint of fraud and a breach of trust. The court add: "Suppose that the director had been a partner of a creditor who required to be paid, and he got the benefit of the payment through his partner, would anybody doubt that there was a tincture of fraud in his getting the benefit by means of undue preference? It is the directors who make the order for the payment. I am of opinion that this fact only makes the case

worse, and compels this court to direct the whole transaction to be set aside.

The acts complained of in the bill were acts of the directors when one of the partners affected by them was present and acting as a director, and either co-operating, or consenting, or acquiescing, in the acts charged. They were such acts as, upon the principles hereinbefore stated, could be treated as void by the corporation or the creditors if they did not deem it for their interest to acquiesce in the action of the directors. This right which the beneficiaries of the fund had to set the transaction aside is one which is vested in the assignees. "The statute is full of authority to him (the assignee) to sue for and recover property, rights, and credits, where the bankrupt could not have sustained the action, and to set aside as void transactions by which the bankrupt himself would be bound. All this, of course, is in the interest of the creditors of the bankrupt." Sawyer v. Hoag, 17 Wall. [84 U. S.] 620. Demurrer overruled.

[NOTE. For decision upon the merits, see Bradley v. Converse, Case No. 1,776.]