## Case No. 1,716.

### BOWDEN v. SANTOS et al.

### SAME v. TURNER et al.

[1 Hughes, 158;[1] 1 Thomp. Nat. Bank. Cas. 271.]

Circuit Court, E. D. Virginia. May Term, 1877.

BANKS AND BANKING — NATIONAL BANKS — INSOLVENCY — FRAUDULENT TRANSFER OF STOCK — TRANSFERRER'S LIABILITY.

The transfer of shares of the capital stock of a national bank, made with intent to exonerate the owner and transferror from liability as a stockholder to creditors, is void as against creditors of the bank.

[See Davis v. Stevens, Case No. 3,653.]

In equity. These two cases are so nearly alike that it is only necessary to consider one of them, which will be the one first named. This was a bill in chancery filed by the plaintiff [George L. Bowden], as receiver of the First National Bank of Norfolk, to enforce the personal liability of the defendant, [C. A.] Santos, as the owner of thirty-nine shares of the capital stock of the said bank. On the 26th day of May, 1874, the bank suspended, and on the 3d day of June of that year the plaintiff was appointed its receiver by the comptroller of the currency, in pursuance of the provisions of the national banking act. [Decree for plaintiff.]

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

L. L. Lewis, for plaintiff.

Baker & Walke and W. H. C. Ellis, for defendants.

HUGHES, District Judge. The bill in this case is filed to set aside certain transfers of the shares of the capital stock of the First National Bank of Norfolk (of which the plaintiff is receiver) made by the defendant, Santos, to the defendants, Lamb and Williams, a few days before the suspension of the bank, in May, 1874. It also prays that Santos may be decreed to pay to the plaintiff the par value of the shares thus transferred.

As to the facts, the bank suspended on the 26th day of May, 1874, and is utterly insolvent. The defendants, Santos and Lamb, at the time of its suspension were directors, and for a long time prior thereto had been officers of the bank. The defendant, Lamb, was president up to a short time before its suspension. For some time before that event the bank had been in a critical condition, and it had been evident to the officers that its "suspension was a mere question of time." The defendant, Santos, aware of the condition of the bank (it was the subject of frequent discussion by the directors), and anxious to relieve himself of liability as the holder of the stock in question, transferred in due form, on the books of the bank to Lamb, nineteen of his shares on the 16th May, and his remaining twenty shares to Williams on the 21st day of May, 1874. At the time of these transfers both Lamb and Williams were insolvent, and have ever since been unable to respond to the demands of the creditors on account of these shares. At the time of these transfers there were already standing in the name of Lamb on the books of the bank over 200 shares of its capital stock. The receiver has been unable to make anything out of either Lamb or Williams on account of their liabilities to the bank. On the other hand, Santos, at the time of these transfers, was, and is, a man of high standing and credit in business circles, and of large means.

In his answer it is averred by Santos that the transfer of the shares was a bona fide transaction, and for valuable consideration; but the allegation in the bill that Williams was insolvent, and unable to respond to the demands of the creditors on account of these shares, is not denied. It is abundantly established by the evidence in the case that the transfers were made to exonerate the defendant, Santos, from his liability as a stockholder. In his answer, Santos declares that he was never the purchaser or owner of the nineteen shares transferred to Lamb. And yet the testimony shows that he executed his note (which he has since been requested to pay) for these shares, and that they stood in his name on the books of the bank for a considerable number of months before he transferred them to Lamb.

The defence set up that these shares were formerly bought in by Lamb for account of the bank, and that it was agreed between them that if Lamb, acting for the bank, would buy the shares for the bank, he might place them in Santos's name, provided he would indemnify him, i. e., take a transfer of the shares when it should be desired by Santos, is invalid. Under the provisions of the national currency act (Rev. St. § 5201) a national bank is prohibited from purchasing or holding its own shares. What is forbidden to be done directly the law does not allow to be done indirectly. Consequently the promise on the part of Lamb to take the shares when requested, if it could be sustained on any ground under the circumstances of this case, certainly cannot be sustained on the ground upon which it is placed in the answer. It is founded upon an illegal agreement, and the case comes strictly within the ruling of the judges in the case of Ex parte Walker, 39 Eng. Law & Eq. 579. Plain as these facts are, they are no plainer than the law of the case. Indeed, there is no serious defence set up against the prayers of the bill, except the technical one that a bill does not lie, no discovery being sought, and there being adequate remedy at law. Counsel for defence rely, as to the doctrine that there is no such thing as fraud per se, on Davis v. Turner, 4 Rand. [4 Grat.] 422, and as to jurisdiction of equity where no discovery is sought, on Home Ins. Co. v. Stanchfield [Case No. 6,660], and Meze v. Mayse, 6 Rand. [Va.] 658. But this is a case of trust, and equity has jurisdiction in all matters of trust. That the capital stock of an incorporated company is a trust fund for the payment of the debts, and is required by courts of equity to be honestly and faithfully guarded and handled, is settled by very many decisions of the courts of this country. I refer only to Wood v. Dummer [Case No. 17,944]; Upton v. Tribilcock, 1 Otto [91 U. S.] 47; Sanger v. Upton, Id. 60; Webster v. Upton, Id. 71; Nathan v. Whitlock, 9 Paige, 159; 6 Paige, 337. See, also, 2 Story, Eq. Jur. § 1252. Any contract, especially among the officers of an incorporated company, involving the withdrawal of any portion of the capital stock from the reach of creditors, will not be tolerated by a court of equity. 6 Paige, 337; Ex parte Bennett, 27 Eng. Law & Eq. 572; Ex parte Walker, 39 Eng. Law & Eq. 576, etc. In the case of Nathan v. Whitlock, 9 Paige, 159, the defendant, Whitlock, who had been a director of the company, transferred his stock to Brown, the president of the company, the latter giving his note, in place of Whitlock's, for the stock transferred. The company afterwards failing, and Brown being insolvent, the receiver was allowed to recover of Whitlock the amount of his shares transferred to Brown. The court held the transfer of the stock to be a fraud upon the rights of the creditors, and ineffectual to relieve Whitlock of his liability,

and that Whitlock, having been a director of the company, must be presumed to have known its situation, and had no right to shift from himself to an irresponsible person the liabilities of a holder of the capital stock transferred. In Upton v. Tribilcock, 1 Otto [91 U. S.] 47, the supreme court says: "The capital stock of a moneyed corporation is a fund for the payment of its debts. It is a trust fund, of which the directors are the trustees. It is a trust to be managed for the benefit of its shareholders during its life, and for the benefit of its creditors in the event of its dissolution. This duty is a sacred one, and cannot be disregarded. Its violation will not be undertaken by any just-minded man, and will not be permitted by the courts." Again, in the case of Sanger v. Upton, 1 Otto [91 U. S.] 60, the law is laid down as follows: "The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied otherwise than upon their demands, until such demands are satisfied."

Again, in the case of Webster v. Upton, 1 Otto [91 U. S.], is it said (page 71): "The whole subscribed capital stock of a corporation is a trust fund for the payment of creditors when the corporation becomes insolvent. * * * The stock cannot be released, i. e., the liabilities of the stockholders cannot be discharged, to the injury of creditors, without payment."

In Angell & Ames on Corporations (10th Ed. § 535), it is said that a solvent stockholder, who has given a stock note for his stock, cannot upon the insolvency of the company, or in contemplation of that event, even with the consent of the directors, transfer his stock to an irresponsible person, and be discharged from liability. So, at section 623, it is said that, however strictly the personal responsibility imposed upon members of an incorporated company may be construed to be against creditors, one point is very clear, and that is, that no member can exonerate himself from his liability, and defeat the claims of creditors, by transferring his stock to a bankrupt. Any other doctrine is offensive to the plainest and best settled principles of morality and equity. A man is estopped to deny the truth of his admissions that have been acted upon by others. "He who is silent when he ought to speak will not be heard when he ought to remain silent." So, as Mr. Santos silently sat by and saw innocent persons contracting with the First National Bank of Norfolk, perhaps on the strength of his name appearing on the stock list of the bank, he will not be heard in a court of equity to say, against the just demands of creditors, that "he was never the purchaser or owner of the stock transferred as aforesaid." The ground of the equitable

liability of the members is the credit which the company has gained, 'as a corporation, on the promise of the individual members to raise a fund to enable the corporation to fulfil its engagements. Ang. & A. Corp. (10th Ed.) § 603.

To the same effect many authorities might be cited, but it is confidently believed that sufficient has been adduced to establish the conclusion that the transfers of the stock made by Mr. Santos were illegal and void, and that, consequently, the defendant, Santos, must be held liable for the par value of the thirty-nine shares of stock transferred to his co-defendants. I will sign a decree requiring the defendants, or either of them, to pay the par value of the shares held by Santos before their transfer, with costs.